UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL SOUZA,<br>    Plaintiff,<br>    v.<br>GREAT AMERICAN INSURANCE COMPANY, et al.,<br>    Defendants. | Case No. 13-cv-03361-JCS<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND MOTION TO STAY**<br><br>**Dkt. No. 7** |

## I.   INTRODUCTION

Plaintiff Manuel Souza filed this action against Defendants Great American Insurance Company ("GAIC"), H + H Builders, Inc. ("H + H"), Diversified Maintenance Systems, Inc. ("DMS"), and the H + H - DMS Joint Venture, alleging that Defendants failed to pay him for work performed under a subcontract for which a payment bond was issued under the Miller Act, 40 U.S.C. § 3133.  Plaintiff also asserts claims against Defendants H + H, DMS, and the H + H - DMS Joint Venture for breach of contract and quantum meruit.

Defendants H + H, DMS, and the H + H - DMS Joint Venture filed a Motion to Compel Arbitration based on the arbitration clause contained in the subcontract.  Defendant GAIC filed a Motion to Stay Proceedings.  Plaintiff did not file a responsive brief in opposition, but did file objections to a declaration submitted by Defendants in support of the Motions.  The Court finds the Motions suitable for decision without oral argument.  The hearing scheduled for Friday, October 11, 2013, at 1:30 p.m., is vacated.  For the reasons explained below, the Motion to Compel Arbitration and Motion to Stay Proceedings are GRANTED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 686(c).

## II. BACKGROUND

### A. The Parties

Plaintiff Manuel Souza is an individual and a licensed California building contractor, and a resident of Santa Clara, California. Complaint ("Compl.") ¶ 4; Civil Cover Sheet. There are four Defendants. Compl. ¶¶ 5-6. Defendant H + H - DMS Joint Venture (hereafter "JV") is a partnership between Defendant H + H and Defendant DMS. *Id.* ¶ 5. Plaintiff alleges that H + H and DMS are corporations organized under the laws of the State of Utah, have their principal places of business in that State, and are citizens of the State of Utah. *Id.* Defendant Great American Insurance Company ("GAIC") is a corporation, organized and existing under the laws of the State of Ohio. *Id.* ¶ 6.

### B. Factual Allegations

In or before 2012, JV contracted with the United States Department of Homeland Security for Contract Numbers HSCG 88-10-D-PQQ020 and/or HSTS02-12-J-CAN049 (collectively the "Prime Contract"). Compl. ¶ 7. The Prime Contract included a work order for an explosives bunker for the Transportation Security Agency at the San Francisco Airport (the "Project"). *Id.* The Project required JV to install certain concrete and other construction work at the airport. *Id.*

Plaintiff alleges that JV obtained a Miller Act payment bond (the "Bond") from Defendant GAIC in the amount of $320,715.00. Compl. ¶ 8. In relevant part, the Bond states: "[JV and GAIC] are firmly bound to the United States of America … in the [amount of $320,715.00]…. [GAIC] binds itself, jointly and severally with [JV], for the payment of [$320,715.00]." Declaration of Timothy Miguel Willardson ("Willardson Decl."), Ex. B (Payment Bond) at 1. The Bond also contains a "condition" which states that this "obligation is void if [JV] makes payment to all persons having a direct relationship with [JV] or a subcontractor of [JV] for furnishing labor, material or both in the prosecution of the work provided for in the [Prime Contract], and any authorized modifications of the contract that subsequently are made." *Id.*

Plaintiff Souza alleges that in 2013, he entered into a contract with JV (the "Subcontract")

"in two contracts or an original contract and a change order . . . ." Compl. ¶ 9. The Complaint further alleges that under the Subcontract, Souza was to furnish labor, materials, equipment, and other facilities required to complete certain concrete and other work on the Project, as required by the Prime Contract and specifications, for the total combined sum of about $221,621.00. *Id.* The Subcontract itself states that the contract price, which is subject to additions and deductions by "Change Orders," is $69,427.00. Willardson Decl., Ex. A (Subcontract) at 1. Plaintiff alleges that JV expressly and impliedly agreed to pay Plaintiff after a reasonable time, with interest, on amounts due and outstanding. Compl. ¶ 10.

The Subcontract contains an arbitration clause. In pertinent part, the Subcontract states:

> In the event of disagreement between the parties over any matters arising out of . . . enforcement of the terms of [the Subcontract] of whatsoever nature including, but not limited to, amounts of money allegedly owed by one party to another party which the parties have not resolved between themselves, either party shall select an arbitrator and give written notice thereof to the other party of the name and address of the arbitrator so chosen and describing the disagreement.

Willardson Decl., Ex. A at 3.

Plaintiff alleges that JV wrongfully terminated the Subcontract without cause in about June of 2013, after Plaintiff had performed material portions of the work provided in the Subcontract. Compl. ¶ 11. As of June of 2013, JV allegedly failed to pay Plaintiff $80,000.00 that was due under the Subcontract for work performed, and labor and materials provided under the Subcontract, within thirty days of notice. *Id.* ¶ 12-13. Plaintiff does not allege the last day on which he performed work under the Subcontract. Plaintiff alleges that he submitted a claim for payment to GAIC under the Bond, but GAIC failed to pay Plaintiff the amount due. *Id.* ¶ 14. Plaintiff does not state when he submitted the claim to GAIC.

### C. Claims for Relief

The Complaint contains three claims for relief. Plaintiff's first claim for relief is for breach of contract. Plaintiff alleges he has performed all obligations under the Subcontract, except where excused by the acts and conduct of Defendants. Compl. ¶ 16. According to the Complaint, JV wrongfully breached and terminated the Subcontract, which has resulted in damages that amount

3

to $100,000.00 in lost income, profits, and wages. *Id.* ¶ 17-18.

Plaintiff's second claim is for quantum meruit. Plaintiff alleges that he provided valuable labor, services, and materials that were necessary for JV to perform and complete its obligations under the Prime Contract for the completion of the Project. Compl. ¶ 21. Plaintiff alleges that JV benefitted from the Plaintiff's contributions listed above, and could not have fully completed the Project in the absence of Plaintiff's contributions. *Id.* ¶ 22. JV allegedly failed to pay Plaintiff for the labor, services, and materials that he provided, which led to damages for Plaintiff and unjust enrichment for Defendants. *Id.* ¶¶ 23-24.

Plaintiff asserts his third claim for relief under the Miller Act, which provides:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b)(1).

Plaintiff alleges that GAIC is obligated, pursuant to the Bond, to pay Plaintiff for the labor, materials, and services he furnished to fulfill the Subcontract, and for which JV failed to make payment. Compl. ¶ 26. Plaintiff alleges that he is entitled to payment from GAIC pursuant to the Miller Act, 40 U.S.C. § 3133, in the amount of $80,000.00, plus interest and costs. *Id.* ¶¶ 27-28.

Plaintiff prays for judgment in his favor and against Defendants, jointly and severally, as follows: damages in the total amount of $180,000.00; costs of suit; and reasonable attorneys' fees. Compl. at 6.

### D. Motion to Compel Arbitration

Defendants JV, H + H, and DMS argue that Plaintiff is required to arbitrate its claims against them because the parties agreed to binding arbitration in paragraph 5.1 of the Subcontract. Dkt. No. 7 at 4 (Motion to Compel Arbitration and Motion to Stay Proceedings) ("Motion"). Defendants cite the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, which provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable…." 9 U.S.C. § 2.

4

1  Defendants argue that there is "no question that the FAA applies to the contract in the instant
2  case." Motion at 4.
3      Moreover, Defendants argue that section 78B-11-102 of the Utah Uniform Arbitration Act
4  contains provisions similar to the FAA provision discussed above.  Defendants contend that Utah
5  law is applicable because the Subcontract contains a choice of law clause which requires the
6  application of Utah law.  *See* Willardson Decl., Ex. A at 4.

### E.  Motion to Stay Proceedings

Defendants further argue that the Court should stay all proceedings, including Plaintiff's Miller Act claim against GAIC, pending the outcome of binding arbitration.  Motion at 5.  Defendants contend that because GAIC is not a party to the Subcontract which contains the arbitration clause, the Court has the discretion to grant the Motion to Stay Proceedings.  *Id.* at 4 (citing *U.S. ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F.Supp.2d 92, 101 (D.D.C. 2009)).  Defendants argue that "[c]oncerns over judicial economy and the possibility of inconsistent results, coupled with a strong federal presumption in favor of enforcing arbitration agreements and the underlying purpose of the Miller Act certainly justify a stay in this case." *Id.* at 5.

Defendants also argue that Plaintiff will suffer no prejudice if the suit is stayed because Plaintiff prematurely asserted his claim under the Miller Act.  Motion at 5.  Defendants argue that the Miller Act only provides a civil cause of action against the surety for subcontractors doing working on a government project "who have not received payment within 90 days after the day on which the person did or performed the last day of labor or furnished or supplied the material…." *Id.* (citing 40 U.S.C. § 3133).  Defendants contend that given the fact the Subcontract was executed on June 7, 2013, and the fact that the Complaint was filed on July 18, 2013, Plaintiff clearly did not wait ninety days before filing a claim under the Miller Act.

### F.  Plaintiff's Objections

Plaintiff filed objections to the Willardson Declaration.  *See* Dkt. No. 11 (Plaintiff's Objections to Evidence as to Willardson's Declaration in Support of Defendants' Motion to Compel Arbitration and Motion to Stay Proceedings) ("Pl. Objs.").  The Willardson Declaration contains a total of five paragraphs.  The first two paragraphs identify Mr. Willardson as counsel

for JV and general counsel for DMS, and state that Mr. Willardson has personal knowledge of the facts in the Declaration and would testify competently thereto. Willardson Decl. ¶¶ 1-2. The next two paragraphs incorporate the Subcontract and Bond, which are attached as Exhibits A and B to the Willardson Declaration. Willardson Decl. ¶¶ 3-4 and Exs. A and B thereto. The last paragraph states Mr. Willardson "declare[s] under penalty of perjury that the foregoing is true and that this declaration was executed in Salt Lake City, Utah." *Id.* ¶ 5.

Plaintiff objects to the second through fifth paragraphs in the Willardson Declaration, stating the exact same objections for each paragraph:

> Hearsay (Fed. Rule Evid., § 801-802, 805); Improper Evidence of Contents of a Writings (Fed. Rule. Evid., § 1004); Lack of personal knowledge (Fed. Rule Evid., § 602(a)); Irrelevant (Fed. Rule Evid., § 401-402).
>
> The Declaration is also not verified under penalty of perjury (Calif. Code Civil Proc. § 2015.5; 28 U.S.C. § 1746; F.R.C.P. § 56 (c)(4); N.D. Local Rule 7-5).
>
> The Complaint (Para 9) alleges two Subcontracts. Only one Subcontract is referenced in this Motion.
>
> The insufficiently authenticated subcontract is only in the name of one of the Defendants, not all of the Defendants.

Pl. Objs. at 2-5.

## III. LEGAL STANDARD

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *DeMartini v. Johns*, No. 12-3929-JCS, 2012 WL 4808448, at *4 (N.D. Cal. Oct. 9, 2012) (citing *Perez v. Maid Brigade, Inc.*, 07-3473, 2007 WL 2990368 at *3 (N.D. Cal. Oct. 7, 2007)); *see also Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1037-38 (N.D Cal. 2008) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51 (3d Cir. 1980)) ("[W]hen considering a motion to compel arbitration, where the plaintiff opposes the motion on the ground that he/she/it did not enter into a valid agreement to arbitrate, the court is supposed to apply a standard similar to the Rule 56 standard."); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136,

1141 (9th Cir. 1991) (accepting the standard set forth in *Par-Knit Mills*). Specifically, under section 4 of the FAA, "a party resisting arbitration must submit evidence demonstrating a genuine issue fact, as when opposing a motion for summary judgment." *Perez v. Maid Brigade, Inc.*, No. 07-3473, 2007 WL 2990368, at *3 n. 4 (N.D. Cal. Oct. 11, 2007) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997)).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

In order to proceed in federal court, Plaintiff's Complaint must establish the existence of subject matter jurisdiction. Indeed, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, ––– U.S. ––––, 131 S. Ct. 1197, 1202 (2011); *Munoz v. Mabus*, 630 F.3d 856, 860 (9th Cir. 2010).

Plaintiff asserts subject matter jurisdiction on the basis of federal-question jurisdiction, and requests the Court to exercise supplemental jurisdiction over the state-law breach of contract and quantum meruit claims. Compl. ¶ 1. "Federal courts have subject matter jurisdiction over Miller Act claims pursuant to 28 U.S.C. § 1331…." *U.S. ex rel. Air Control Technologies, Inc., v. Pre Con Industries, Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013). However, the Miller Act only provides a cause of action to contractor who has not "been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made…." 40 U.S.C. § 3133. The Complaint in this action was filed on July 18, 2013, a mere forty-one days after the Subcontract was executed on June 7, 2013. *See* Willardson Decl. Ex. A. Thus, it is clear that Plaintiff did not wait ninety days before filing his Miller Act claim.

Even if Plaintiff did not wait ninety days prior to filing this action, the Court finds that there is still federal-question jurisdiction on the basis of the Miller Act. The Ninth Circuit has held that the Miller Act's one-year statute of limitations is non-jurisdictional, but rather a "claims processing rule." *U.S. ex rel. Air Control Technologies, Inc. v. Pre Con Indus., Inc.*, 720 F.3d

1174, 1177 (9th Cir. 2013). The Ninth Circuit reasoned that Congress had not "clearly stated" that the statutory limitation is jurisdictional. *Id*. at 1176 (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, —– U.S. ——, 133 S.Ct. 817, 824 (2013). The court further reasoned that "the Miller Act was 'intended to be highly remedial,' and the Supreme Court has stated that courts must construe the Miller Act's provisions with this highly remedial purpose in mind." *Id*. at 1178 (citing *Fleisher Eng'g & Constr. Co. v. United States ex rel. Hallenbeck*, 311 U.S. 15, 17–18 (1940)). The Court applies the same reasoning−there is no indication that Congress sought the ninety-day waiting requirement to be jurisdictional, and the Miller Act's provisions must be construed with a remedial purpose. *See id*. Accordingly, the fact Plaintiff filed suit before waiting ninety days after the last day of work does not deprive this Court of federal-question jurisdiction.

Moreover, even if federal-question jurisdiction is lacking, the Court may adjudicate this action because there is diversity jurisdiction. Diversity jurisdiction exists where no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Plaintiff is domiciled in and is a resident of California. JV, and its partners, H + H and DMS are organized under the law of the state of Utah, have their principal places of business in Utah, and are citizens of that State. Compl. ¶ 5. GAIC is a corporation, organized and existing under the laws of the State of Ohio and its principal place of business is in the State of Ohio. The Complaint alleges the amount in controversy is $180,000.00, which is greater than the jurisdictional minimum.

### B. Plaintiff's Objections

Plaintiff does not explain why his "objections" to the Willardson Declaration have any merit. Nevertheless, the Court addresses two such objections.

First, Plaintiff asserts that paragraph nine of the Complaint alleges "two Subcontracts," only one of which is referenced in Defendants' Motions. Paragraph nine of the Complaint alleges "H + H - DMS contracted in writing with Plaintiff Souza … in two contracts or an original contract and a change order to furnish labor, materials, equipment…." Compl. ¶ 9. Construed broadly, Plaintiff's "objection" may assert that another contract exists which provides Plaintiff with a cause of action for breach of contract, and that contract does not contain a similar

1    arbitration clause as does the Subcontract attached to the Williardson Declaration. Nevertheless,

2    Plaintiff's objection is, at best, attorney argument. Attorney argument is not evidence and does

3    not create issues of fact. *Genentech, Inc. v. Insmed Inc.*, 436 F. Supp. 2d 1080, 1092 (N.D. Cal.

4    2006) (holding that parties "parties cannot produce evidence of triable issue of fact by relying only

5    upon attorney argument."). Plaintiff has submitted no declaration to establish that another contract

6    does indeed exist.

7        Plaintiff asserts a second objection to the fact that the "insufficiently authenticated

8    subcontract is only in the name of one of the Defendants, not all of the Defendants."[2] Pl. Objs. at

9    2-5. Construing this "objection" broadly, Plaintiff appears to argue that the suit is not arbitrable

10   because only JV is bound under the Subcontract. However, JV is a partnership between H + H

11   and DMS, thus H + H and DMS are parties to the Subcontract as well. *See Interserve, Inc. v.*

12   *Fusion Garage PTE. LTD.*, No. 09-5812, 2010 WL 3339520, at *4 (N.D. Cal. Aug. 24, 2010)

13   (stating that "courts freely apply partnership law to joint ventures when appropriate") (citing

14   *Weiner v. Fleischman*, 54 Cal. 3d 476, 483 (1991)); *Int'l Union of Operating Engineers, Local 3 v.*

15   *Zurich N. Am.*, No. 06-9567, 2006 WL 2791156 at *4 (E.D. Cal. Sept. 27, 2006) (holding that a

16   partner "who enjoys the fruits of the contract and acquiesces to being bound by the acts of its

17   partner may be liable for breach of contract.") (citing *DeSantis v. Miller Petroleum Co.*, 29 Cal.

18   App. 2d 679, 683-84 (1938)). Thus, three of the four Defendants in this action are parties to the

19   Subcontract. Moreover, the Court's analysis below addresses in detail the fact GAIC is not party

20   to the Subcontract.

21       Plaintiff also appears to object to the authenticity of the Subcontract. *See* Pls. Objs. at 2-5

22   ("The insufficiently authenticated subcontract …."). To authenticate documents used to support a

23   motion, a party must attach the documents as exhibits to an affidavit or declaration made by a

24   person through whom the exhibits could be admitted into evidence at trial. *Laasko v. Xerox Corp.*,

25   566 F. Supp. 2d 1018, 1021 (C.D. Cal. 2008) (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764,

26   773-74 (9th Cir. 2002)). The affiant must show personal knowledge of the evidence, and

competence to testify to the matters stated in it. *Id.* (citing *Orr*, 285 F.3d at 774 n. 9). These requirements are met here because Mr. Willardson is counsel for JV and DMS, and states that the facts contained in his Declaration are within his personal knowledge, and if called upon the witness, he would be able to competently testify to the Subcontract and Bond. Willardson Decl. ¶¶ 1-2.

### C.  Motion to Compel Arbitration

#### 1.  Legal Standard

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A defendant who is a party to a written arbitration agreement that falls within the scope of the FAA may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration. *See id.* § 3.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (internal quotation marks omitted). Thus, the role of the court is limited to determining: (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue. *Id.*

#### 2.  Analysis

There is an arbitration clause in the Subcontract to which Plaintiff, as well as Defendants H + H, DMS and JV, are bound. *See* Willardson Decl. Ex. A at 2-3 (paragraph 5-1). Plaintiff has not challenged the existence of this arbitration clause, or the fact that Plaintiff, by agreeing to the Subcontract, agreed to arbitrate any dispute arising out of the Subcontract. Thus, a valid agreement to arbitrate exists.

The next question is whether the agreement encompasses the dispute in the present case. In pertinent part, the arbitration clause reads as follows:

> In the event of disagreement between the parties over any matters arising out of . . . enforcement of the terms of this Agreement of whatsoever nature including, but not limited to, amounts of money allegedly owed by *one party to another party* which the parties have not resolved themselves, either party shall select an arbitrator and give written notice thereof to the other party of the name and address of the arbitrator so chosen and describing the disagreement.

Willardson Decl. Ex. A at 2-3 (emphasis added). The instant case involves a disagreement arising out of "amounts of money allegedly owed by one party to another party." *Id*. Accordingly, the dispute between the parties to the Subcontract (Plaintiff, H + H, DMS and JV) is within the scope of the agreement to arbitrate under the Subcontract.

However, GAIC is not a party to the Subcontract which contains the arbitration provision, thus Plaintiff need not arbitrate the Miller Act Claim against GAIC. *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529-30 (7th Cir. 1996) (holding that the mandatory stay provision of the FAA applies only to parties to the arbitration agreement); *ATSA of California, Inc. v. Continental Ins. Co.*, 702 F.2d 172, 176 (9th Cir. 1983) (finding that the movant for the stay under the FAA must be a party to the agreement to arbitrate, as must be the non-movant). "Indeed, the overriding purpose of the FAA is not judicial economy or the expeditious resolution of claims, but the enforcement of agreements into which parties have entered." *United States ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F.Supp.2d 92, 97 (D. D.C. 2009). In their Motions, Defendants effectively concede that Plaintiff is not required to arbitrate the dispute with GAIC, as they filed a Motion to Compel Arbitration only for JV, H + H, and DMS, and separately filed a Motion to Stay Proceedings for GAIC.

**D.      Motion to Stay Proceedings**

**1.      Discretionary and Mandatory Stays**

Under certain circumstances, the FAA *requires* a district court to stay a suit pending resolution of arbitration. 9 U.S.C. § 3. In pertinent part, the FAA states: "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an [arbitration] agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* (emphasis added). Where the issues in a suit are "referable to arbitration," the FAA requires the district court

11

to stay the suit.

Here, however, Plaintiff Souza's claim against GAIC is not "referable to arbitration" because GAIC is not a party to the Subcontract with the arbitration provision. The Supreme Court has held that "[i]n some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983) (citation omitted). In a similar case cited by Defendants, the district court from the District of Columbia reached the same conclusion, holding that it is within the court's discretion to grant a stay with respect to non-arbitrating parties because issues with such parties are not "referable to arbitration." *See Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F. Supp. 2d 92, 100-01 (D. D.C. 2009). Accordingly, the Court has discretion in determining whether to stay Plaintiff's claim against GAIC while Plaintiff arbitrates its suit against JV, H + H, and DMS.

**2.   Whether the Court Should Exercise Discretion to Stay this Case**

Defendants argue that "[c]oncerns over judicial economy and the possibility of inconsistent results, coupled with a strong federal presumption in favor of enforcing arbitration agreements and the underlying purpose of the Miller Act certainly justify a stay in this case." Motion at 5. In support of the Motion to Stay, Defendants cite *Milestone Tarant*, where a plaintiff subcontractor filed two separate lawsuits−one against the contractor who failed to pay sums owed to him, and one against the surety for the contractor liable for a Miller Act bond. *Id.* at 92. The contractor moved to compel arbitration with the subcontractor under an arbitration agreement; and the surety, which was not a party to the arbitration agreement, moved to stay its case pending arbitration of the contractor's case. *Id.*

The court exercised its discretion and granted the surety's motion to stay. The court reasoned that a stay "comports with judicial economy and consistency" because the surety's liability was "dependent upon" the liability of the contractor, and absent a stay, the parties would be litigating and arbitrating "substantially the same issues." *Milestone Tarrant*, 672 F.Supp.2d at 101. The court also reasoned that "[a]llowing litigation to proceed in [the suit against the surety]

would disserve the 'liberal policy favoring arbitration agreements.'" *Id*. at 103 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Finally, the court believed that "not staying litigation under these circumstances would allow any public works subcontractor to 'circumvent' its agreements to arbitrate with the prime contractor simply by suing the surety in federal court." *Id*.

The Court finds the reasoning in *Milestone Tarrant* to be persuasive. Moreover, the Ninth Circuit has addressed a similar issue, and found that imposing a stay of a case with a Miller Act claim against the surety so arbitration on the contract claim could proceed against the prime contractor was not an abuse of discretion. *See U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) ("Considerations of economy and efficiency fully support the District Court's determination that the third party claim and other matters must await the final determination made in connection with the arbitration."). Here, as in *Milestone* and *Newton*, the Court considers judicial economy, consistency, and policy favoring arbitration, and finds that these factors weigh in favor of granting the Motion to Stay. Accordingly, the Court stays the entire proceeding, including Plaintiff's Miller Act Claim against GAIC, pending the resolution of the arbitration between Plaintiff and Defendants JV, H + H, and DMS.

## V.   CONCLUSION

For the reasons stated above, the Motions are GRANTED. Plaintiff's claims shall be submitted to arbitration pursuant to the Subcontract's arbitration clause. In the interim, this action is STAYED, pending resolution of arbitration. The parties shall notify the Court when a final decision has been reached in the arbitration process. In the meantime, the Clerk is instructed to administratively close the file in this case.

**IT IS SO ORDERED**.

Dated: October 7, 2013

JOSEPH C. SPERO
United States Magistrate Judge